**K.J.B., Appellant–Respondent,**

v.

**C.M.B., Respondent–Petitioner.**

**No. 55311.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 24, 1989.

Tofle & Oxenhandler, Marvin Tofle, Columbia, for appellant-respondent.

Karen Heineman, Kansas City, for respondent-petitioner.

KAROHL, Judge.

Husband-father appeals from modification of divorce decree which terminated his rights of visitation and temporary custody with the parties' two minor children. The parties were married in 1980. A dissolution was granted in June, 1984. The decree adopted an agreement of the parties and awarded joint custody of the children. Father was in the United States Air Force, stationed in Germany. Consequently, the decree provided that if father was unable to exercise his custody rights his parents would exercise father's rights.[1] In 1987, mother withheld father's custody and visitation rights. She alleged the children, now ages seven and eight, were being physically, psychologically and sexually

---

1. The strict legal significance and the question of enforceability of this provision of the decree, adopting an agreement of the parties, is not before us.

abused during their visits with father or his parents. Mother instituted a motion to modify by petitioning the trial court for modification of custody order.

On September 30, October 26, and October 27, 1987, the trial court heard mother's second amended motion to modify together with father's first amended motion to modify and motion for contempt. He alleged mother willfully denied him custody under the decree. On October 27, 1987, by agreement of the parties the hearing was suspended and ordered continued until January 22, 1988. The court ordered, pending further hearing, that the parties undergo counseling with a therapist, to be selected by mutual agreement of the parties. Father was ordered to undergo separate, individual counseling preparatory to joint counseling with his two children. The joint counseling was to commence when the therapist deemed it reasonably safe for the children. The parties, pursuant to the consent order, stipulated in open court that the therapist's written report would be admissible in future proceedings on the pending motions.

After only two sessions, the therapist decided any contact between the father and the children would be dangerous. The therapist discontinued the sessions because he felt father was simply showing up for therapy and not really working to cure the problems.

The hearing resumed on April 21, 1988. The court issued findings of fact and law, and awarded mother sole custody of the two children and terminated any further contact between father and the two children.

Father's principal complaint is there was no substantial evidence to support modification of the decree awarding sole custody to mother or to terminate all contact between father and children. He also challenges the termination of visitation by paternal grandparents. Specifically, father contends the trial court's fifth and sixth findings of fact are erroneous. In the court's fifth finding of fact the court found father refused to cooperate in the psychological evaluation process and indicated an unwillingness to comply with court orders. The sixth finding of fact was father intentionally undermined the mother's authority as primary custodian and did not intend to change this behavior.

Father also claims there was not sufficient evidence of the financial condition of the parties in the record to support an award to mother of $10,065 in attorney's fees. In addition, father argues the court erred when it admitted evidence of his conduct prior to dissolution and excluded two medical exhibits. Father also contended he was prejudiced in preparation for trial by unequal access to the children for purposes of medical and psychological evaluation.

■ Father's first point on appeal is the custody and visitation findings and conclusions contained in the trial court's order are against the weight of the evidence. We do not re-weigh the evidence. That is the function of the trial court. Rather, we review claims that the trial court judgment is unsupported by substantial evidence. In that light, we find there was ample evidence to support modification of decree and award of sole custody to mother. However, the denial of visitation at the home of the children is not supported by the evidence.

The testimony which supports the trial court's custody findings and order is substantial. Mother offered testimony from three witnesses concerning the effect of joint custody and the relationship currently existing between the children, father and paternal grandparents. Dr. Joel Ray, a clinical psychologist diagnosed the children as being emotionally disturbed and found their behavior to be consistent with abuse but he could not say abuse was the cause of the disturbance in these children. Dr. A.E. Daniel, a physician and psychiatrist, testified the children had been subjected to physical abuse by their grandfather, grandmother and father in the environment in Montgomery County. His conclusions were based upon facts reported to be several years old and he was not aware of any current physical abuse beyond suspicion. He refused to recommend father not be allowed to see the children. When asked

about visitation rights he responded, "Certainly,", "no problem [with that]." Dr. Ann Dell Duncan, a clinical psychologist, testified the boys gave descriptive indication that they had been traumatized at the hands of both the father and the grandparents. She suggested supervised visitation followed by unsupervised visitation for the father only, none for his parents.

Dr. Corrales and Dr. Ro–Trock evaluated father, mother, children, step-father, and paternal grandparents. Both recommended mother be given primary custody of the children. Even father's expert witness psychologist, Dr. James Hall, testified: "there's a lot of anxiety in the boys ... there's something wrong in the relationship between them and their father and grandparents on father's side." This evidence was sufficient to support the award of sole custody to the mother. We cannot say the trial court abused its discretion and we defer to the trial court and its opportunity to judge the credibility of the witnesses. Rule 73.01; *C.J.(S.)R. v. G.D.S.*, 701 S.W.2d 165, 167 (Mo.App.1985).

■ We next consider father's third point on appeal. Father claims the court erred in admitting mother's evidence of events and circumstances in violation of § 452.410 RSMo 1986 because these events were known to mother at the time of the prior hearing. Specifically, father objects to the testimony of former neighbors, mother, and psychologist Dr. Duncan, all of whom testified father abused the children prior to the parties' dissolution.

Section 452.410 RSMo 1986 states in pertinent part:

The court shall not modify a prior custody decree unless it has jurisdiction under the provisions of Section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were *unknown to the court at the time of the prior decree,* that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. (Emphasis added).

The policy underlying § 452.410 in not allowing evidence of events which occurred prior to a previous decree is that these events have been merged into the previous decree. *McFadden v. McFadden,* 509 S.W.2d 795, 798 (Mo.App.1974). This evidence may not be relitigated under the doctrine of res judicata because judgment upon the evidence is conclusive as to the rights of the parties. *Id.*

Here the issue of custody was not litigated at the previous hearing because the parties agreed to joint custody. Consequently, evidence of the father's abusive conduct toward the children was never considered by the court. Any evidence of pre-dissolution abuse by father was relevant to evidence of post-dissolution abuse, and the children's welfare is the court's foremost consideration. "The welfare of the children is the prime consideration in any adjudication of their custody, and the rights and claims of the contending parties, even parents, are matters of secondary importance." *Northrup v. Sieve,* 517 S.W.2d 470, 473 (Mo.App.1974). Since father's conduct was unknown to the court at the time of the original decree, the court did not err in allowing evidence of this conduct at the modification hearing. Section 452.410 RSMo 1986.

■ Father also contends the trial court erred when it refused father the opportunity to obtain medical and psychological evaluations of the children. On September 18, 1987, father filed a motion for continuance seeking access to the children for evaluation by experts. This motion was denied September 22, 1987. Father's last unsupervised visit with the children had occurred in May, 1987. On the first day of trial, September 30, 1987, father renewed his request to have the children made available for evaluation. The court deferred a ruling. On October 2, 1987, father presented his oral motion for psychological examination of the children by conference call between the judge and attorneys for both parties. Trial court granted father's motion, in part, by ordering mother to produce the children for one psychological evaluation. Neither father nor paternal grandparents were to be present during evaluation. On October 26, 1987, father filed a

motion for an order requiring mother to submit the children for psychological and physical examinations. The court noted in its docket sheet that the motion was previously ruled upon on October 2, 1987.

Father contends he did not have the same opportunity as mother to obtain expert testimony. Father claims he was prejudiced because he was unable to develop evidence of the children's inter-relationship with him and the paternal grandparents. Father claims this prejudiced his ability to prepare and develop his case.

The Rules allow the court to order the mother to submit the children to physical or mental examinations. Rule 60.01 RSMo 1986. Here the court did not abuse its discretion by denying father's requests for examination. The court found father, both before and after the dissolution, physically and psychologically abused his children. Father's requests for physical examination of the children were honored in part. Mother testified the children had received bruises during their visits with their father. Father requested physical examinations in September 1987, although he had not been allowed unsupervised visitation with the children after May, 1987. Any evidence of bruises would have disappeared by September. Hence, the request came too late to support a claim of error directed to the relief the court denied.

In October, 1987, at father's request a psychologist, Dr. James Hall, met with the children, mother, father, paternal grandparents, and mother's husband. Although Dr. Hall testified he did not know if it would be dangerous for the children to see their father or paternal grandparents, he did say there is "something wrong" in the relationship between the children and their father and paternal grandparents. Dr. Hall recommended the court not sever the relationship between the children and father. Father also chose Dr. Bill Graham, a psychologist, jointly with mother in connection with an agreement between the parties and pursuant to the court's order. Dr. Graham testified it was dangerous for the children to have further contact with their father and paternal grandparents. The children saw psychologists, Dr. Ramon Corrales and Dr. Larry Ro–Trock, during the interim agreement. These doctors recommended mother be given custody. They did not oppose children's "safe contact" with father. Father had three opportunities to have the children psychologically evaluated, while the mother had expert testimony from four witnesses: Dr. Joel Ray, Dr. A.E. Daniel, Dr. Ann Duncan and Dr. Bill Graham.

The record reflects each expert found, at a minimum, the children, father and paternal grandparents had an abnormal relationship and more counseling was needed. The welfare of the children is the court's primary concern. Father had already been accused of physical and psychological abuse of the children. Also, Dr. Graham testified that in his opinion the children have seen enough professional people and forcing the children to see more professionals would be detrimental to the children. After considering the number of experts each party was able to obtain, the testimony of the experts, and the welfare of the children, we find the trial court did not err in denying father's motion for additional discovery.

■ Father's sixth point alleges paternal grandparents were not parties to this cause and therefore their rights of visitation were improperly terminated by the trial court. The relevant language of the dissolution decree reads: "If respondent [father] is unable to physically get the children during the times specified for his custody and control, his parents J⸻ and P⸻ B⸻, or either of them, shall exercise *his rights* of custody." [Emphasis added].

Under the original decree paternal grandparents had no visitation or temporary custody rights which the trial court could terminate. Paternal grandparents merely enjoyed derivative visitation rights from father to be exercised in his absence on military assignment. If father was unable to see the children, paternal grandparents could see them instead. When the court terminated father's visitation and custody rights, it necessarily terminated

paternal grandparents derivative visitation rights.

■ Father's seventh point is the trial court erred in sustaining mother's objection to father's offer of Exhibits C and D on the grounds the exhibits contained hearsay consisting of conclusions and opinions from persons not shown to be qualified as experts. The parties stipulated the records were business records of the University of Missouri Hospital. The court accepted the records as exhibits under the stipulation that they be used only for the purpose of establishing that in May and June of 1985, there was no physical evidence of abuse of the children. The court sustained mother's objection to any use of the exhibits or the opinions contained therein for another purpose.

Exhibits C and D are medical records of the children prepared by pediatrician Dr. Neese after he examined the children. The records also contain reports by Dr. Neese's assistants: Barbara Allen, a social worker, and Lorrie Starr, a person who works in Dr. Neese's playroom. The basic assessment of Dr. Neese and his assistants was the allegations of sexual abuse of the boys were unfounded. Father also introduced into evidence Exhibits A and B which are letters written by Dr. Neese to mother's former attorney. In these letters Dr. Neese reports what he and his assistants found during his examination of the children in May and June of 1985. These letters contain the same information which father sought to introduce into evidence through Exhibits C and D. Exhibits C and D are the medical records which Dr. Neese referred to in his letters, admitted as Exhibits A and B. Refusal of the trial court to admit into evidence the assessments and impressions found in Exhibits C and D was not prejudicial to father because; (1) this evidence was introduced by way of Exhibits A and B; and, (2) the trial court found the allegations of physical and sexual abuse of the boys by the paternal grandparents were unproven.

■ Father's eighth point is the trial court erred in awarding mother $10,065 in attorney's fees because there was not suf-

ficient evidence of the financial condition of the parties to support such an award. Section 452.355 RSMo 1986 vests broad discretion in the trial court in awarding attorney's fees. We review only for abuse of discretion. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 828–29 (Mo. banc 1984). The trial court must consider all relevant factors in awarding attorney's fees, including the financial resources of both parties. *Petty v. Petty,* 739 S.W.2d 738, 742 (Mo. App.1987).

At the time of dissolution marital assets were minimal and neither party was awarded maintenance. Both parties have a high school education. Father received additional schooling while in the Air Force. He is a reserve deputy for the Montgomery County Sheriff's Department, works full-time for his father, works part-time as a cook, and also serves in the National Guard. Mother has remarried. Her new husband makes $32,000 per year and has purchased a home worth $52,000. However, there is no evidence that mother has assets of her own or works outside the home. Father's physical and psychological abuse of the boys necessitated the modification of the decree out of which the mother's attorney's fees arose. We cannot say the court abused its discretion in awarding attorney's fees to the mother.

We next review the complete termination of father's visitation rights with the minor children, and consider father's second and fourth points on appeal in reverse order. The second and fourth points on appeal challenge the trial court's fifth and sixth findings of fact.

■ The trial court's sixth finding of fact, which served the purpose of justifying the trial court's order to terminate any further contact between father and the two minor children, stated:

That Respondent and his parents have intentionally undermined the authority of Petitioner as the primary custodian of the minor children of the parties, have not expressed any willingness to change this behavior, and that further contact at this time is likely to cause severe emo-

tional and behavior problems for the minor children.

Father claimed this finding was error because the consent decree provided for joint custody, and therefore, mother was not legally the primary custodian. We need not decide whether she was the primary custodian to determine this finding of fact was error.

First, contrary to the findings father has expressed a willingness to change his behavior. He testified he would do whatever he had to do in order to see his children.

Second, the evidence that father intentionally undermined the authority of mother as the primary custodian was elicited prior to the suspension of the hearing on the motions and the consent order of October 27, 1987. The consent order provided for preparatory counseling for the father and others for the purpose of reestablishing visitation. This agreement was consistent with testimony of mother's expert, Dr. Ann Dell Duncan, that evaluation and counseling for the father was a recommended prerequisite to establishing visitation. No evidence appears in the record that the father, subsequent to the suspension of the hearing, undermined the authority of the mother as primary custodian. In fact, as required in the consent order, father had no contact with the children during this time.

The evidence does not support a finding that father intentionally undermined the primary custodian's authority. Accordingly, termination of all visitation between father and his children on that basis is unsupported by the evidence.

The termination of all contact between a father and his minor children is a draconian measure, not to be contemplated lightly. "Courts encourage the continued interests, love and affection of divorced parents for their children and strive to afford maturing children ample opportunity for close contact with 'both' parents." *Cissell v. Cissell*, 573 S.W.2d 722, 724 (Mo.App.1978); *Northrup v. Sieve*, 517 S.W.2d 470, 474 (Mo.App.1974); *Dupree v. Dupree*, 357 S.W.2d 241, 243 (Mo.App.1962).

Child custody provisions of a divorce decree should not be disturbed unless clearly erroneous and the children's welfare requires some other disposition; the contending parties' personal rights are of secondary importance. *Cissell v. Cissell*, 573 S.W.2d 722, 724 (Mo.App.1978).

There was general agreement by the psychologists who testified at the hearing, that reestablishing a father's relationship with his children is a desirable goal. Dr. Hall, father's expert witness, testified "the father not seeing the kids anymore would be the worst outcome." No expert testified specifically that visitation at the home of the children would be detrimental.

The trial court agreed some form of visitation by the father was in the children's best interest provided the visitation would not endanger the children's physical health or impair their emotional development. This was the purpose of the consent order of October 27, 1987.

The applicable Missouri statute, § 452.400.2 RSMo 1986 states:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.

■ The temporary consent order of October 27, 1987 provided for father to receive counseling to reestablish visitation and insure that father's visits would not endanger the children's physical health or impair their emotional stability. The parties mutually agreed upon Dr. Graham as the therapist. Based on Dr. Graham's testimony concerning the two counseling sessions with father, the court wrote its fifth finding of fact:

> That Respondent has refused to cooperate in healing the breech [sic] between the parties by willingly participating in psychological evaluation, therapy and counseling and has indicated an unwillingness to comply with any court order requiring counseling or supervised visita-

tion, such that there is no point in requiring counseling or supervised visitation.

Father attended both counseling sessions scheduled with Dr. Graham, and has not refused to attend any other sessions. However, no further sessions were scheduled, because Dr. Graham felt the father was uncooperative. However, Dr. Graham testified concerning father, "[g]enerally he was friendly towards me. There was no behavior of animosity or any anger outbursts, [he] appeared to want to be cooperative with me during both sessions."

Dr. Graham's reason for asserting father was uncooperative, was that he was merely showing up for therapy but not working on problems honestly, and was unwilling to admit any of the allegations against him or his parents. Significantly, these counseling sessions took place while the modification motions were pending, albeit suspended.

The third condition in the temporary consent order of October 27, 1987, which provided for counseling of father and others and for eventual visitation was: "The parties stipulate in open court that the therapist's written report shall be admissible in future proceedings on the pending motions."

In effect, Dr. Graham required the father, as a precondition to seeing his children, to confess to child abuse and testify that his parents had physically and sexually abused the children, even though these allegations were at issue in the pending case. Further, many of the alleged abusive acts by the grandparents could only have occurred while the father was in Germany. Consequently, father had no personal knowledge and could not admit that these acts occurred. Moreover, the trial court subsequently found the allegations against the grandparents to be unproven.

The record indicates father attended all counseling sessions scheduled with Dr. Graham pursuant to the consent order, and he was cooperative.

Further, Dr. Graham's impressions and conclusions are not conclusive on the matter of visitation. Dr. Graham assumed the allegations made against father and pater-

nal grandparents were true. When asked whether he would reevaluate and change his opinion if some of the assumed facts were not true, Dr. Graham replied, "I don't know." Significantly, the court found many of the allegations unproven.

■ The record also contradicts that part of the findings of fact which states "father indicated an unwillingness to comply with *any* court order requiring counseling or supervised visitation." [emphasis added].

Mother offers father's answer to a hypothetical question, posed to father by Dr. Graham, as an indication of father's unwillingness to comply with any court order requiring counseling or supervised visitation. However, father's answer was to a hypothetical question and not a refusal or an indication that he would refuse to comply with a court order. Further, if arguendo, such an answer indicates an unwillingness to comply with one particular court order, it does not indicate an unwillingness to comply with any court order requiring counseling or supervised visitation, as stated in the findings of fact.

Father has not refused to comply with a single court order to date, and has complied with those orders issued. Also, subsequent to the counseling sessions, father testified he would do whatever he had to do concerning supervised visitation.

Dr. Graham was asked what change would have to take place in father in order for beneficial contacts to be possible between the father and the minor children. Graham responded that father would have to come, internally, to an awareness of his behavior, accept that damage has been done, and be willing to work on these problems honestly. Given the fact that the therapist selected pursuant to the consent order, Dr. Graham, felt the ultimate issues in dispute had to be discussed before safe contact could occur between the father and children, it appears that counseling was attempted prematurely.

We affirm the modification decree in all respects except the denial of visitation of father with his children and they with him.

We remand solely for an order allowing visitation as determined by the court.

PUDLOWSKI, P.J., concurs.

CRANDALL, J., dissents in separate opinion.

CRANDALL, Judge, dissenting.

I dissent from that portion of the majority opinion which reverses the trial court's denial of visitation rights to father.

There was substantial evidence in the record that father physically abused and traumatized the children. Father's own expert testified that the boys suffered from anxiety and that there was something wrong with their relationship with their father. It is a permissible inference from the evidence that visitation between father and children would not be in the childrens' best interests.

The trial court heard extensive evidence in this case and arrived at a difficult decision. While the result of that decision was harsh for father, it does not follow that the decision was unjust. The focus of the courts should be on the welfare of the children, not the welfare of the parents. The judgment of the trial court is not clearly erroneous and therefore should be affirmed.