Donald G. ERICKSON, Petitioner–
Respondent,

v.

Barbara L. BLACKBURN, Respondent–
Appellant.

No. 26128.

Missouri Court of Appeals,
Southern District,
Division One.

June 1, 2005.

Petition for Rehearing and Transfer
Denied June 17, 2005.

James R. Sharp, Sharp & Bredesen, Springfield, MO, for Appellant.

Carolyn G. Buschjost, Ronald D. White, Williams, Robinson, White, Rigler & Buschjost, P.C., Rolla, MO, for Respondent.

JAMES K. PREWITT, Judge.

Barbara L. Blackburn ("Appellant") appeals a Judgment of Modification filed October 17, 2003, by the Circuit Court of Pulaski County, awarding "primary physical custody" of the minor child of the parties to Donald G. Erickson ("Respondent").[1]

### Facts

Viewed in a light most favorable to the judgment, the facts of the case are as follows. On January 26, 1998, the marriage between Respondent and Appellant was dissolved and an "absolute divorce" granted by the General Court of Justice in Cumberland County, North Carolina. A daughter, Devin Elizabeth Erickson ("Devin"), had been born of the marriage on September 24, 1991. Pursuant to the judgment, the parties were awarded joint custody with Appellant to have "primary physical custody" and Respondent granted "secondary physical custody and reasonable visitation rights." In addition, Respondent was required to provide $300.00 per month in child support payments.[2]

At the time of the divorce, the couple lived in Fayetteville, North Carolina. Shortly afterward, Respondent, an officer in the United States Army, attended schools at Fort Benning, Georgia, and Fort McClellan, Alabama, and then was stationed in Fort Lewis, Washington. Appellant moved with Devin to South Carolina.

Devin suffers from two medical conditions, a cleft palate, which causes speech problems, and encopresis, an enlarged colon which causes involuntary soiling. While in South Carolina, Devin received treatment at a craniofacial clinic for the speech impediment. Personnel at the clinic suggested that Devin see a counselor to deal with social problems caused by her medical conditions. Counseling was recommended because Devin was extremely resistant to going to school and often tardy or absent. This was because the other children teased her about her speech impediment, as well as her soiling her clothes. In spite of counseling, Devin's school record continued to suffer. Her third-grade report card indicated that she had five tardies the first quarter, eight the second quarter, eighteen the third quarter, and twenty-three in the last quarter. Her excessive number of tardies and absences affected her grades; indeed, she was at risk of failing math, her first class of the day.

In July, 2001, while Devin was visiting her father for the summer, Appellant moved to Florida where she got a job waiting tables at night. When she brought Devin to Florida in August, Appellant quit that job so Devin "would not suffer," but then had trouble finding another one. Appellant's financial situation was very difficult since she received only $300.00 a month in child support, could not find a job in her field, and Devin's medical conditions

---

1. *Speer v. Colon,* 155 S.W.3d 60, 62 (Mo.banc 2005), held that Missouri's statutory scheme does not allow for an order granting "primary physical custody," but only sole physical custody or joint physical custody. *See* § 452.375.1, RSMo 2000.

2. Both of the parties remarried, and each had an additional child after the divorce. Respondent married in 1999, and the couple had a son in April, 2003, while Appellant married in July, 2002, and gave birth to a daughter a year later.

necessitated that Appellant miss a lot of work "to take her to doctor's visits, and school conferences."

Respondent testified that in mid-September, 2001, Appellant phoned him, said that she could not take care of Devin anymore, and asked him to arrange to have Devin picked up. Appellant testified that she called Respondent and told him about her problems securing employment, but that it was Respondent who felt it would be best for Devin for her to live with her father. It was contested at trial whether there had been an agreement as to when Devin was to return to her mother's care; Respondent denied that any agreement had been reached while Appellant insisted that they agreed Devin was to be returned immediately following the school year. In any case, Respondent arranged for his sister to meet Appellant halfway, pick Devin up, and take her to Virginia. Respondent was in the midst of a change of station to Fort Leonard Wood, Missouri, so his current wife drove to Virginia to pick up the child and brought her to Missouri.

At the end of May, 2002, Appellant phoned Respondent and indicated that she wanted to buy a plane ticket so that Devin could fly back to Florida to rejoin her. Respondent testified that he told Appellant not to bother because he was filing for custody. This he did on May 13, 2002, in the Circuit Court of Pulaski County, Missouri.

On June 21, 2002, the Circuit Court of Pulaski County heard Respondent's motion seeking temporary custody of Devin. On the same date, the court entered its order awarding Respondent temporary custody and abating his child support obligation, setting out a visitation schedule for Appellant, and granting Respondent permission to relocate to Fort Drum, New York. A "Judgment and Order of Temporary Cus-

tody, Visitation and Relocation" was filed on July 12, 2002, reflecting that earlier order. Respondent moved to New York in August, 2002, with his current wife and Devin.

While the parties were preparing for trial, Appellant took Devin to two different counselors for a total of four interviews to determine Devin's wishes as to which parent she preferred to live with. Appellant, through her attorney, hired a social worker in Florida to conduct a home study of Appellant's house. As part of the study, Devin, along with Appellant and her current husband, were interviewed. In addition, Devin was interviewed alone two more times, with the primary purpose of those interviews to determine Devin's custodial preference. The social worker testified that he did not believe his questions had any detrimental effects on Devin.

Before trial, Respondent's unit was deployed to Afghanistan. In mid-August, about a month before trial, Respondent discovered that his unit was to be deployed. He learned of the orders through word of mouth and, since he had received no written orders, he contacted his commander to see how this would impact him and his situation with the upcoming trial. His commander assured him that he would not be "brought forward" until his family situation was settled.

At trial, Respondent testified that, although it was possible he may be deployed after the situation with his family was resolved, his deployment was in no way imminent or even certain. Although his unit had officially been deployed, not all members of the unit were sent. In addition, he had been left in charge of shipping equipment from Fort Drum to Afghanistan, and his commander told him he would not be "going forward" until all the equipment had been shipped. His unit was expected to return to New York in

January or February of 2004, so it was altogether possible that he would never need to leave the country.

Respondent testified that he believed that, even in the event of his deployment, it would be in Devin's best interest to remain in New York with her step-mother and infant half-brother. He believed that it was important that Devin's life remain stable, keeping the same home, same school, and same friends.

Appellant indicated at trial that she was fearful that Respondent would be deployed and Devin would be in the care of a non-parent. Appellant testified that, even if Respondent were granted custody, she wanted the parenting plan to require that if Respondent were deployed for longer than thirty-one days, Devin would come live with her. Appellant stated she would be willing to wait until the end of a semester for the change in living arrangements but would not wait until the end of the school year. Appellant was concerned that Devin would not be in the care of either of her natural parents, and that that would make her feel scared and uncertain.

On September 15, 2003, a trial was held in Pulaski County Circuit Court before the Honorable John D. Wiggins. The trial court filed its judgment of modification, findings of fact and conclusions of law on October 17, 2003. Appellant contends that the court's decisions were against the weight of the evidence and therefore erroneously declare or apply the law.

## Standard of Review

■ The appellate court will affirm the judgment of the trial court unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Suffian v. Usher*, 19 S.W.3d 130, 136 (Mo. banc 2000). We view all evidence and inferences drawn therefrom in a light most favorable to the judgment. *Id.* In addition, in a custody matter, this Court gives even greater deference to the trial court than in other matters. *Id.*

Appellant presents six points on appeal. Points I through IV contend that the trial court erred in modifying the original custody arrangement. Claims of error include the court's failure to make the required statutory findings, failure to interview the child, not having sufficient evidence to find a substantial and continuing change in circumstance in either Appellant's or Devin's situation, and that the court erred in finding the custody change to be in Devin's best interest. In Points V and VI, Appellant avers that the court should not have ordered retroactive child support for Respondent, nor should it have awarded Respondent any attorney's fees.

## Point I

■ Appellant contends that the trial court erred as a matter of law in that it failed to make specific findings on all of the statutory factors set forth in § 452.375.2, as required by § 452.375.6, in particular the wishes of the minor child as to her custodian and the intentions of the parties to relocate the principal residence of the child.[3]

■ In order to modify a prior custody agreement, there is a two-pronged test the court must meet. *In re Marriage of Copeland*, 148 S.W.3d 327, 329 (Mo.App. 2004). The trial court must find first there has been a substantial change in circumstances of the custodial parent or the child, and second, because of the new circumstance, a modification of custody would be in the best interest of the child. *Id.* § 452.410.1. In determining the best inter-

---

**3.** Unless otherwise noted, all statutory references are to RSMo.2000.

est of the child in light of the change in circumstances, the court must consider the public policy set forth in § 452.375.4 and each of the eight factors listed in § 452.375.2. *Copeland,* 148 S.W.3d at 330. The statutory sections are set forth marginally.[4]

■ Appellant states that § 452.375.6 "requires the court to include written findings on 'each of the factors listed in subdivision (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.'" However, the statute does not require that the court make written findings on *each* of the factors, but only those relevant to the case. *Speer v. Colon,* 155 S.W.3d 60, 62 (Mo.banc 2005). *See also In re Marriage of Cluck,* 121 S.W.3d 271, 273 (Mo.App.2003).[5]

In the case on appeal, the judge made a significant number of findings of fact in response to Appellant's request for such findings. While they do not track the order or verbiage of the factors listed in the statute, the court's findings of fact clearly show that the judge made written findings on, at a minimum, five of the eight statutory factors.

The court made findings on the following facts. It concluded that the child has bonded with her half-brother and "with children her own age" (Factor # 3). Appellant is the party who chooses not to communicate with Respondent regarding matters involving the child, which creates a negative impact on the child and "directly impairs the ability of the child to enjoy a nurturing, loving relationship with both parents" (Factor # 4). Devin has improved in school and has adjusted well to life with Respondent and his wife, who have provided her with a suitable home (Factor # 5). Respondent has provided Devin with adequate medical and dental care, while Appellant has engaged in conduct that is harmful to the child, including repeatedly trying to get the child to express an opinion regarding with whom she would like to live, causing the child additional stress (Factor # 6). And finally, although it is possible that Respondent could be deployed to Afghanistan, such is not certain, and it would be speculative to assume that his deployment is imminent (Factor # 7).

Appellant's fifth requested finding of fact dealt specifically with the issues she raises in this point on appeal. She requested a finding on: "Whether or not the

4. Section 452.375.4 reads as follows:
 The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have

 frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

5. Section 452.375.6, in pertinent part, reads as follows:

 If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. . . .

Court has considered all relevant factors in making a determination of custody, as provided in Section 452.375.2 RSMo., including but not limited to: 1. What the minor child's wishes are to her primary custodian; and 2. The intention of either parent to relocate the principal residence of the child." The court's response was, "[t]he Court considered all relevant factors required by statute."

The record shows substantial evidence to support the proposition that the trial court's findings were made pursuant to the requirements of § 452.375.6, and that written findings of fact were made on the *relevant* factors listed in § 452.375.2. Appellant's first point is denied.

## Point II

■ As discussed above, the court did not specifically rule on the question of the child's wishes as to custody. Indeed, the Appellant requested that the judge interview Devin in chambers to ascertain her wishes, and the judge refused. Appellant asserts that it was an abuse of discretion for the judge to refuse to interview the child because the child was nearly twelve years old at the time of the trial; she had expressed differing opinions on her preference to both her parents and to counselors; and, because of her age and differing opinions, it was incumbent upon the Court to interview her.

■ Interviewing a minor child to ascertain the child's preference of a custodian is governed by § 452.385, which states that "[t]he court *may* interview the child in chambers[.]" There is no requirement that the judge do so, nor is there any mention of the age of the child being a factor. It is completely within the discretion of the trial court whether to interview a child in chambers and, if the court declines to interview the child, then the stat-

ute has no application. *Osmun v. Osmun,* 842 S.W.2d 932, 936 (Mo.App.1992).

Appellant contends that the court's failure to interview Devin is an abuse of discretion because the child was "practically 12 years old at the time of trial." She cites two Missouri cases which found it an abuse of discretion for the court to fail to interview a thirteen-year-old child. *See Kordonowy v. Kordonowy,* 887 S.W.2d 809, 812 (Mo.App.1994) and *Parson v. Parson,* 93 S.W.3d 791, 793 (Mo.App.2002). Appellant fails to mention two cases that held that it was not an abuse of discretion for the judge to forgo an *in camera* interview with twelve-year-old minors. *See Babbitt v. Babbitt,* 15 S.W.3d 787, 789 (Mo.App. 2000); *Osmun,* 842 S.W.2d at 932.

*Babbitt* is directly on point. There, the father maintained that it was reversible error when the judge refused the father's request that the twelve-year-old child be interviewed in chambers to determine the child's wishes as to his custodian, as authorized by § 452.385. *Id.* The court held that "[t]he dispositive rule of law on this issue is that a § 452.385 interview is not mandatory[.]" *Id.* However, they acknowledged the "long-standing rule" that in a custody proceeding, if the child is of sufficient age to intelligently express a preference as to custody, the child should be allowed to do so, and the court must consider the child's wishes in addition to the other factors listed in § 452.375.2. *Id.*

However, an *in camera* interview is not the exclusive procedure for determining the child's preference. *Id.* The parent may call the child to testify as to the child's preference. *Id.* Respondent indicated that he wanted to shield Devin from the stress of making a choice, and there was evidence from a letter addressed to Devin's diary that Respondent's wife found in Devin's room that she did not want to be the one to make that choice. If there is

sufficient evidence in the record of the child's wishes, the court could feel certain that it had enough information as to the child's preference without either interviewing or calling the child to testify. *Osmun*, 842 S.W.2d at 936.

There was evidence that Devin, at different times and to different parties, said she wanted to live with both parents. The letter previously referenced indicates that she did not want to be the one to have to make this most difficult of choices. There is also evidence in the record that, although the judge made no written finding regarding Devin's preference, he clearly considered it. At trial, the judge, in closing remarks to the parties, stated:

> I'm concerned. I'm concerned about a lot of things, and obviously, you can understand my concern when I chose not to interview the child. I do that in ... some cases. Especially when I think the child has been interviewed enough. I think this child has been interviewed more than enough. I think this child has been asked the question "where do you want to live" more than enough. Maybe not directly, but it doesn't have to be direct to ... make a child feel pressured. And this child wants to make both of you happy.

Assuming *arguendo* that the judge had interviewed Devin and Devin had expressed to him a strong desire to live with one parent or the other, the court is not obligated to follow the child's wishes but should consider her wishes along with all the other facts and circumstances before it and follow her wishes only if the welfare and interests of the child are consistent with that preference. *Kerr v. Louderback*, 35 S.W.3d 511, 514–15 (Mo. App.2001).

It was not an abuse of discretion for the trial court to forgo an interview with the child. The record reveals that the judge had sufficient evidence, including that of Devin's preferences, to make a well-reasoned decision. Appellant's second point is denied.

## Point III

Appellant avers in her third point that the trial court erred in finding a substantial and continuing change in circumstances to warrant modification of the original custody determination, because the finding was not based on substantial evidence. She contends that there was not sufficient evidence to find a change in her or Devin's situations, and the trial court inappropriately placed the burden on Appellant, rather than Respondent, to show that her circumstances had changed.

As discussed above, § 452.410.1 requires that a court find both "that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." However, the court is not required to state specifically what circumstances have changed as long as the evidence is sufficient to support a finding that such a change has occurred. *Baumgart v. Baumgart*, 944 S.W.2d 572, 575–76 (Mo.App.1997).

Viewed in a light most favorable to the trial court's findings and judgment, there was sufficient evidence to show substantial and continuing changes in the circumstances of both Appellant and Devin. Although the statute requires only a change in circumstances in *either* the custodial parent *or* the minor child, in this case there was significant change in the circumstances of both.

While Devin was in her mother's custody following the divorce, she developed an aversion to going to school, resulting in an increasing numbers of tardies and absences. Missing so much school affected

Devin's grades. Appellant did arrange for Devin to meet with a counselor to address this issue, but counseling apparently did not help. Beside her scholastic problems, Devin's physical needs were not being addressed adequately by Appellant. When Devin first came into her father's custody in September of 2001, Respondent took her to a physician, optometrist and a dentist. The dentist found that Devin had ten cavities, including a very noticeable one in a front tooth. Devin also needed eyeglasses. The trial court could conclude that Appellant was not taking Devin to a dentist, at least not frequently enough, and she may also have needed to have her eyes checked.

As to Appellant's circumstances, by her own admission, in September, 2001, she was unable to care for Devin properly and asked Respondent to take the child. Appellant had moved to Florida without first securing housing and employment, took and quit a job as a waitress, then had trouble finding a replacement position. Although at trial, Appellant contended that her situation was now stable, and she was able to care for Devin, the court held otherwise. In his findings of fact, the judge stated: "The Court finds that [Appellant's] present circumstance is little improved. Even though she has remarried, has borne another child, she is not employed, the home she and new husband have purchased is heavily mortgaged and they have a negative net worth."

■ Appellant claimed that the court improperly placed the burden upon her to show that her circumstances have improved, rather than the burden being placed on Respondent. Appellant is correct that the burden to show change in circumstances is upon the party seeking modification of custody. *Johnson v. Lewis*, 12 S.W.3d 379, 383 (Mo.App.2000). Appellant also claims that "the original cir-

cumstances which led to Devin going to live with her Father were temporary in nature and cannot be considered [to] be either substantial or continuing which should result in a permanent change of physical custody from Mother to Father."

■ Respondent agrees that no such burden may legally be placed upon Appellant. However, although the issuance of a temporary order of custody does not shift the burden of proof, the underlying facts that prompted the issuance of the temporary order may be considered, including the length of time the non-custodial parent had actual custody of the child. *Baumgart*, 944 S.W.2d at 576. Even without shifting the burden of persuasion to Appellant, there is sufficient evidence of change in circumstances. Point III is denied.

### Point IV

In her fourth point, Appellant again challenges the court's determination of best interest of the child. She claims that the decision was not based on substantial evidence in that Respondent was being deployed to Afghanistan, that Appellant now has a stable home so there is no change in circumstances, and that Devin had expressed a desire to live with her.

All three of these contentions have been addressed in the analyses of the points above. In Point I, we held that the court had made the required statutory findings to support its decision regarding best interest of the child. In addition, one of those findings included the judge's conclusion that Respondent's deployment to Afghanistan was not imminent and was, in fact, merely a future possibility. Point II dealt extensively with Devin's desires as to who should be her custodian, and we concluded that there was no firm proof of her wishes, as at different times she told each parent she wanted to live with them. The third point addressed the issue of whether

Appellant's circumstances had improved since September, 2001, thus there was no "change in circumstances" to warrant a change in custody. However, we found there was a substantial and continuing change in circumstances.

As there are no new issues presented in this point, we deny it without further discussion.

## Point V

 In her fifth point, Appellant claims the trial court erred in awarding Respondent retroactive child support, because such award was a misapplication of law and an abuse of discretion. Appellant avers the award was an abuse of discretion because Respondent did not receive child support at the temporary custody hearing; therefore he is barred by the doctrines of waiver and estoppel from asking for retroactive support at trial, as he "knowingly gave up the right to obtain child support from Mother while this case was pending." Child support is governed by § 452.340, which specifically allows for retroactive child support.[6]

 While § 452.340.1 authorizes retroactive child support, the statute does not require it. *Smetana v. Smetana*, 963 S.W.2d 1, 2 (Mo.App.1998). It is completely within the discretion of the trial court to determine the effective date of any child support order as long as it is subsequent to the filing of the petition. *Id.*

Appellant cites no authority that supports her contention on waiver and estoppel, but references a case that held "[t]he fact that wife was denied child support in a PDL order does not preclude the trial court from awarding her retroactive support as part of the final decree." *In re Marriage of Kovach*, 873 S.W.2d 604, 607 (Mo.App.1993). In the instant appeal, Respondent failed to ask for child support in the motion for temporary custody rather than being denied it, but we see no reason why the two situations should be treated differently.

Appellant's position that Respondent should be estopped from receiving retroactive child support is likewise unsupported by case law. Appellant cites two cases in support of her premise that "where a party relies to his detriment on the reasonable belief that a party with the right to support has expressly renounced that right, the doctrine of waiver relieves the obligor of his obligation to pay child support." She then lists *Grommet v. Grommet*, 714 S.W.2d 747, 749 (Mo.App.1986) and *Schubert v. Tolivar*, 905 S.W.2d 924, 927 (Mo. App.1995). Appellant, however, fails to mention that, in order to use the equitable doctrine of estoppel to relieve the duty of the obligor to pay support, the court must find facts or circumstances to show that, without the invocation of equitable estoppel, an *injustice would occur*. *Grommet*, 714 S.W.2d at 750.

Appellant states that Respondent's request for retroactive child support at trial, when he could have requested it during the motion for temporary custody, places an unfair burden on Appellant because she relied on the fact that she would not have to pay retroactive child support and spent that money on Devin when she was in Appellant's care. This is hardly the sort of "indicia of injustice," *id.*, the court must

---

6. § 452.340.1 reads, in pertinent part:
 In a proceeding for dissolution of marriage, legal separation or child support, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or

necessary for the support of the child, including an award retroactive to the date of filing the petition, without regard to marital misconduct, after considering all relevant factors ...

find. Indeed here, as in *Grommet*, Appellant "seeks to invoke equitable principles not to protect [herself] from injustice, but to retain an undeserved windfall. Under the circumstances, invocation of equity is entirely inappropriate." *Id.* Point V is denied.

### Point VI

In her final point, Appellant asserts that the court erred in awarding a $2,000 attorney fee judgment to Respondent. She contends that making such award was an abuse of discretion and was not based on evidence, because Respondent was more financially able to pay his attorney's fees than she. Appellant supports this contention with the court's finding that she and her husband have a negative net worth.

"Section 452.355 RSMo 2000 provides that the trial court may order a party to pay reasonable attorney's fees after considering all relevant factors including the financial resources of both parties, the merits of the case, and the actions of the parties during the pendency of the action." *Prewitt v. Hunter*, 105 S.W.3d 874, 877 (Mo.App.2003). Specifically, the trial court may consider a party's conduct during litigation which unfairly increases the other party's legal fees. *Kovach*, 873 S.W.2d at 608. It is entirely within the trial court's discretion whether to award attorney's fees, and the appellate court will interfere with an attorney's fee award only on a showing of abuse of discretion. *In re Marriage of McCoy*, 818 S.W.2d 322, 325 (Mo.App.1991). To demonstrate an abuse of discretion, the complaining party must demonstrate that the trial court's decision was so against the logic of the circumstances, arbitrary and unreasonable as to shock the sense of justice. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo.banc 2001).

At trial, Respondent asked for a judgment against Appellant for $5,000 of Respondent's legal fees. He testified that his legal fees as of the time of trial were approximately $15,000. His attorney then asked him why, since he was the party who initiated the action, he should be awarded any amount for attorney's fees. Respondent replied that it was because of "[t]he times that I have had to come back to Missouri, the travel cost for that." He further explained that it was not simply the fact that he had to travel to Missouri; he had initiated the proceedings in Missouri and understood he would have to be present. However, there was an instance when Appellant requested Respondent and his attorney be present for the filing of a motion, although he was not called to testify nor was evidence taken or presented to the court. The judge, after considering all relevant statutory factors, granted Respondent an award of $2,000.

Appellant relies on *McCoy, supra,* for the proposition that a decision to award attorney's fees is clearly erroneous if there is a large discrepancy between the income of the two parties and the party in a poorer financial situation is charged. In *McCoy*, this court reversed an order for the husband to pay wife's attorney's fees "[u]nder the peculiar circumstances of this case." *McCoy*, 818 S.W.2d at 325. There, the husband received significantly less property in the dissolution than wife, $36,613 versus $147,140, and lived on a fixed retirement income that was less than what the still-employed wife earned. *Id.*

Appellant's husband earns in excess of $5,000 per month (that amounts to $60,000 per year, plus overtime), and the court imputed potential income to her in the amount of $2,037 per month, for a total of $7,037 monthly. Respondent makes $4,441 as a captain in the army, and his wife does not work.

■ "The trial court is an expert on the issue of attorney's fees and is given wide latitude in the allocation of costs and fees." *Kovach*, 873 S.W.2d at 608. We find that the trial court's award of attorney's fees in this case was within the evidence and was not an abuse of discretion. Point VI is denied.

The judgment is affirmed.

GARRISON, P.J., files separate opinion concurring part and dissenting in part.

RAHMEYER, J., concurs.

PHILLIP R. GARRISON, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority opinion except with reference to a statement made in the discussion of the third point on appeal, and with reference to the analysis under the sixth point affirming the $2,000 judgment against Appellant for attorney fees. I respectfully dissent from those portions of the opinion.

In its discussion of the third point on appeal, the majority opinion cites *Baumgart v. Baumgart*, 944 S.W.2d 572, 576 (Mo.App. W.D.1997), for the proposition that in a modification action pursuant to § 452.410.1, "the court is not required to state specifically what circumstances have changed as long as the evidence is sufficient to support a finding that such a change has occurred." I disagree with that statement. First, Appellant does not raise an issue in her point relied on about the sufficiency of the trial court's findings with reference to identifying the changes of circumstances it found to support the modification. This is perhaps for the reason that while the trial court made a general statement that there had been a change of circumstances of the child and its custodian so continuing and substantial as to warrant modification as to child custody, visitation and support to serve the best interests of the child, the court did make specific findings, in response to requested findings of fact, that were responsive to the changes of circumstances alleged in the motion. In my view, therefore, this statement in the majority opinion is dicta.

Beyond that, I disagree with the principle for which the *Baumgart* case was cited here. Section 452.410.1 prohibits a trial court from modifying a prior custody decree unless, among other things, it "finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." In my view, when a trial court finds a change of circumstances sufficient to warrant a modification of custody, it should specify not only that there were changes in circumstances, but also what those changes were and to whom they apply. Otherwise, appellate courts are left in the position of perusing the entire record to determine if there is a basis for the finding without any indication of what the trial court believed or disbelieved. If the statute requires that a trial court shall not modify a prior custody decree unless it "finds" the necessary prerequisites, requiring such a specific finding is neither unreasonable nor does it offend the plainly expressed legislative intent of the statute.[7] Consistent with this is the statement in *Sumnicht v. Sackman*,

7. The judgment in this case was entered prior to the effective date of Rule 78.07(c) which provides that allegations of error relating to the failure to make statutorily required findings must be raised in a motion to amend the judgment in order to be preserved for appellate review.

906 S.W.2d 725, 728 (Mo.App. W.D.1995), a modification of custody case, which held that "unless we see something in the record that is clearly an item of substantial concern, we will confine ourselves to those concerns which have been pleaded, and which the trial court believed to be sufficiently significant to warrant mention in the court's order." *See also Parker v. Parker*, 66 S.W.3d 778, 787 (Mo.App. W.D. 2002).

I also dissent from that portion of the majority opinion affirming the award of attorney fees to Respondent. As pointed out by the majority, § 452.355.1 requires consideration of all relevant factors including the financial resources of both parties, the merits of the case, and the actions of the parties during the pendency of the action. Here, Appellant's point is directed to the lack of substantial evidence of an ability to pay the judgment as well as the comparative financial condition of the parties. She argues that "the trial court specifically found in its judgment that Mother, who is only employed part-time, and her present husband have a negative net worth and therefore are in a far worse position to pay the cost of this litigation than is Father, who currently earns a gross monthly income of $4,441.00 per month as a captain in the United States Army."

Appellant was not employed at the time of trial, having given birth to a child two months earlier. She anticipated going back to work as an emergency registration clerk at a local medical center, but on a part-time basis because of the cost of child care. Her income at that employment had been $19,993 when she had worked full-time. Accordingly, her Form 14 reflected a gross monthly income for her of $833. Respondent's Form 14 imputing income of $2,037 per month to Appellant was adopted by the trial court.[8]

The record before us does not reflect any evidence about Appellant's available disposable income. The evidence did indicate that she and her current husband have a home that has no equity, they owe $71,000 in other mortgages and debts, they have no savings, and they have no assets with values as much as their liabilities. In fact, the trial court found that Appellant "is not employed, the home she and her new husband have purchased is heavily mortgaged and they have a negative net worth."

In the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported. *In re Marriage of Trimble*, 978 S.W.2d 55, 59 (Mo.App. S.D.1998). A court must know what debts each party owes and what non-employment income each has before it can determine either need or ability to pay attorney fees pursuant to § 452.355.1. *Id.; see also Barancik v. Meade*, 106 S.W.3d 582, 594 (Mo.App. W.D.2003). Thus, "financial resources" of the respective parties contemplates consideration of which party is best financially able to bear attorney's fees. *In re Marriage of McCoy*, 818 S.W.2d 322, 325 (Mo.App. S.D.1991).

In *McDaniel v. McDaniel*, 982 S.W.2d 729, 732–33 (Mo.App. E.D.1998), the mother, to whom $886 monthly income was imputed, was ordered to pay $2,000 of the father's attorney fees even though the evidence indicated that he had a monthly income of $2,393. There was no evidence that the mother had available resources from which to pay the attorney fee award, and there was no evidence that the father could not afford to pay his own attorney fees. *Id.* at 732. The appellate court reversed the award, finding it was an abuse of discretion, based, among other things,

---

8. The imputation of that income to Appellant is not an issue on this appeal.

on the mother's lack of ability to pay. *Id.* at 733.

In the instant case, I would reverse the award against Appellant for attorney fees. Even considering the income imputed to Appellant, Respondent has over twice as much monthly income as does Appellant. In *Kreitz v. Kreitz,* 750 S.W.2d 681, 686 (Mo.App. E.D.1988), the court reversed an attorney fee award where the party in whose favor the judgment was entered had an income more than twice that of the party ordered to pay. Additionally, here, there is no showing that Appellant has the ability to pay the attorney fees or that Respondent has a need. In this regard, I also note that Appellant was ordered to pay child support of $165 per month as well as $2,475 in retroactive child support, payable at the rate of $100 per month.

In affirming the judgment against Appellant for part of Respondent's attorney fees, the majority opinion relies, in part, on the income of Appellant's present husband. I disagree with this approach for two reasons. First, there was no evidence concerning the expendable income of Appellant and her current husband after paying their existing debts, which totaled more than their assets.

Secondly, § 452.355 obligates the court to consider the "financial resources of both parties," but I do not believe that necessarily includes the income or assets of a current spouse. In this case, neither party cites authority concerning the propriety of including the income of Appellant's current husband in assessing an ability to pay attorney fees. The majority opinion also includes that factor without citing authority in support.

The decision in *K.J.B. v. C.M.B.,* 779 S.W.2d 36, 41 (Mo.App. E.D.1989), indicates, *albeit* without the citation of authority, that a new spouse's income is not an appropriate consideration in determining

an award of attorney fees under § 452.355. There the court noted the new spouse's income, but said, "[h]owever, there is no evidence that mother has assets of her own or works outside the home." *Id.* However, the western district's decision in *Callis v. Bryce,* 872 S.W.2d 539, 543 (Mo.App. W.D. 1994), indicates, again without the citation of authority, that consideration of assets jointly owned with a new spouse was appropriate in determining an award of attorney fees.

Section 452.370.1 provides, in part, that in actions for modification of child support or maintenance, the trial court shall consider all financial resources of both parties, "including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other persons with whom he or she cohabits," and the earning capacity of a party who is not employed. As indicated above, § 452.355.1 permits the trial court to order one party to pay part of the other party's attorney fees and costs after considering all relevant factors including the financial resources of both parties. Unlike § 452.370.1, § 452.355.1 includes no provision concerning consideration of a third party. Instead, § 452.355.1 specifically refers to the financial resources of "both parties."

Appellant's current husband is not a party to these proceedings and there is no showing that his income is a "resource" available to her to satisfy a judgment for part of Respondent's attorney fees. Accordingly, I do not agree with any suggestion that it is appropriate to consider the income of Appellant's husband in determining the propriety of an award against her for a part of those attorney fees.