**Shaune Allen LAPEE, Respondent,**

v.

**Sarah Rose Lapee SNYDER (Hanson), Appellant.**

**No. WD 65791.**

Missouri Court of Appeals, Western District.

Aug. 15, 2006.

---

**3.** All rule references are to Missouri Court Rules (2006), unless otherwise specified.

Susan D. Szczucinski, Overland Park, KS, for appellant.

David G. Sperry, Independence, MO, for respondent.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

## Factual Background

In 1998, the trial court dissolved the marriage of Mr. Shaune Lapee (Father) and Ms. Sarah Rose Lapee Snyder Hanson (Mother) and awarded sole legal and physical custody of their child, Dakota to Mother[1] and denied Father visitation rights. Father had been convicted of assaulting Mother and did not appear at the hearing.

In 2002, Father filed a motion to modify the decree requesting sole custody subject to Mother's restricted and supervised

---

1. The trial court also awarded child support, but it is not one of the issues on appeal.

visits. Mother requested sole custody subject to supervised visits for Father. Subsequently, the parties agreed to a parenting plan in which they shared legal and physical custody of Dakota. In June 2003, the trial court modified the dissolution decree to joint legal and physical custody and incorporated the parenting plan, which gave both parties significant time with Dakota.

In October 2003, Mother filed a motion to modify custody, requesting sole custody because Father allegedly abused Dakota. Mother also asserted that Father relocated his residence without notice to the trial court or Mother during Father's summer custodial period. That action was later dismissed without prejudice.

In June 2004, Mother filed another motion to modify custody similar to the previous one. Subsequently, she filed a request for a change of judge and a motion for an emergency hearing. Both motions were granted and eventually another *guardian ad litem* was appointed. Both parties filed motions for contempt against each other for failing to comply with the 2003 modification judgment. The emergency hearing lasted two days, at which time, the trial court heard evidence from Dakota's therapists; Division of Family Services (DFS), which was limited to events that occurred after the 2003 modification judgment; the *guardian ad litem's* expert who evaluated the parties and the child; the testimonies of Mother and Father; and several other witnesses. The trial court granted Mother sole temporary custody of Dakota and denied Father visitation rights because such contact would "endanger the child's physical health and impair his emotional development." The trial court scheduled a second hearing for June 6, 2005, and suggested that the parties receive treatment during the interim,

as recommended by the *guardian ad litem's* expert. At the second hearing, the trial court heard additional evidence about the abuse by Father. It concluded that Father had abused Mother and the child "such as to make a substantial impact on the Court's decision as authorized in § 452.375.2(6)." In addition, it found unsupervised visitation would be harmful to Dakota. It awarded sole legal and physical custody to Mother, and Father was allowed supervised visitation with Dakota at the home of the paternal grandparents.[2]

## Standard of Review

We review this case under *Murphy v. Carron. Sewell–Davis v. Franklin,* 174 S.W.3d 58, 59 (Mo.App. W.D.2005). Therefore, we reverse only if the trial court's judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* We afford the trial court broad discretion in awarding child custody, and will affirm unless we are firmly convinced that the child's welfare requires a reversal. *Id.*

## Analysis

Mother argues that the trial court erred in precluding evidence of domestic violence that occurred before the 2003 modification judgment and the prior history of Mr. Lapee and the paternal grandparents. To review this claim, an offer of proof that will allow this court to determine the prejudicial effect of the exclusion must have been made to the trial court. *Wood v. Wood,* 94 S.W.3d 397, 404 (Mo. App. W.D.2003); *B.J.D. v. L.A.D.,* 23 S.W.3d 793, 797 (Mo.App. E.D.2000). Mother offered proof that Father abused Mother in Dakota's presence; Father abused Mother's daughter; the paternal

2. Both motions for contempt were denied.

grandparents allowed Father to visit Dakota during his probation; and DFS ordered no contact between paternal grandparents and Dakota after Father abused Dakota in their presence.

The trial court denied the evidence because it consisted of events that occurred before the 2003 modification judgment. Mother claims that the exclusion of this evidence was a misapplication of the law because the law requires the court to consider the existence and history of domestic violence before its determination of child custody and visitation, citing *Mund v. Mund,* 7 S.W.3d 401 (Mo. banc 1999), for support. Mother also claims that the principles of collateral estoppel and/or res judicata do not apply since the parties stipulated to joint custody in the prior decree. Although the record is not clear as to which legal principle the trial court based its decision, its reasoning is consistent with section 452.410.[3] Section 452.410 requires the court to consider only "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree" in modifying custody. Applying this rule, however, the evidence as it relates to the issue of custody should not have been excluded because the prior custody decree was based on an agreement between the parties. *See KJB v. CMB,* 779 S.W.2d 36 (Mo.App. E.D.1989).

In *KJB,* the mother filed a motion to modify the dissolution decree from the stipulated joint custody to denying father contact with the children because she believed that the children were being sexually, physically, and psychologically abused while in his or his parents' care. 779 S.W.2d at 37–38. Subsequently, the father filed a motion to modify. *Id.* at 38. After hearing about father's pre-dissolution and post-dissolution abuse of the children, the trial court granted the mother custody and terminated all contact between the father and the children. *Id.* at 38. On appeal, the father raised several contentions, including that the trial court violated section 452.410 RSMo. (1986) when it allowed testimony of his pre-dissolution abuse of the children. *Id.* at 39. This court denied the point, ruling no error was committed in allowing the evidence of the pre-dissolution abuse because the evidence was unknown to the court at the time of dissolution. *Id.* The *KJB* court reasoned that because section 452.410 is designed to prevent the relitigation of events that have been merged under the doctrine of res judicata, and the parents stipulated to custody in the prior decree, the issue of custody had not been litigated. *Id.* Therefore, evidence of father's pre-dissolution abuse was unknown to the court. *Id.* Furthermore, it reasoned, "Any evidence of pre-dissolution abuse by father was relevant to evidence of post-dissolution abuse, and the children's welfare is the court's foremost consideration." *Id.*

In this case, Father originally was denied visitation and the 2003 modification judgment awarded him joint physical custody, but does not contain any findings of the statutory factors, including domestic violence. Nor does it mention Father receiving treatment, which is statutorily required before granting unsupervised visitation because of Father's previous restricted visitation rights. *See* § 452.400.2(3). It merely recites that there has been a change in circumstances and custody modification is in the child's best interest. Applying the reasoning from the *KJB* court to the present case, we find that excluding evidence related to

3.  All statutory references are to RSMo. (2000) and the Cumulative Supplement (2005), unless otherwise indicated.

the requisite statutory factors in the custody determination that occurred before the 2003 modification judgment was a misapplication of the law, as the evidence was unknown to the trial court at the time of the 2003 modification judgment.[4] Because "[n]ot every trial error is reversible error," Mother has to show that the exclusion of the evidence prejudiced her. *Wood,* 94 S.W.3d at 404. Mother was prejudiced because she was unable to present evidence to support her position that awarding visitation rights to Father would not be in Dakota's best interests, and supervision by the paternal grandparents would not protect him or her from Father's abuse.

Therefore, we reverse and remand to the trial court to review the entire DFS record and hear the evidence about Father and the paternal grandparents concerning the history of abuse prior to the 2003 judgment and make the appropriate decision in light of all the evidence. The additional evidence will require new findings and potentially a new visitation plan; therefore, addressing Mother's contentions about the deficient findings; and the grandparents as supervisors would be premature.[5] Mother's contention about the judge's bias, however, will be addressed because the case is being remanded.

■■■ Mother's argues that the trial judge erred in failing to recuse himself because he was biased against her. Mother asked the judge to recuse himself in a post-trial motion to reconsider, and the

trial court denied the motion. "We will affirm a denial of a motion for recusal unless the court abused its discretion." *Moore v. Moore,* 134 S.W.3d 110, 113 (Mo. App. S.D.2004). A judge should recuse himself when his "impartiality might reasonably be questioned." Rule 2.03, Canon 3 E. Therefore, we must determine "whether a reasonable person would have a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court." *Moore,* 134 S.W.3d at 115 (internal quotation marks and citation omitted); *See Rutlader v. Rutlader,* 411 S.W.2d 826, 831 (Mo.App.1967) (finding impropriety where the judge stated his decision would be against the witness before all the evidence was heard and carried it out at the end of the trial).

Mother claims that the judge felt she was a "mean spirited" individual because of Mother's testimony at an unrelated proceeding in his courtroom and, therefore, could not be impartial to her. She claims that this is reflected in his derogatory comments about her at the hearing and to her counsel, as well as in the judgment.[6] Our review of the transcript does not reveal any bias against Mother or any appearance of impropriety. *See In the Interest of D.C.,* 49 S.W.3d 694, 698 (Mo.App. E.D.2001) (holding "trial judge is free to express his personal opinion about a party's conduct to the attorneys involved"). Accordingly, we cannot conclude that the judge abused his discretion in denying the motion for recusal.

---

**4.** We are aware of the recent decision, *In re Marriage of Hendrix,* 183 S.W.3d 582 (Mo. banc 2006), our decision does not conflict because the trial court in that case made the requisite statutory findings. *Hendrix,* 183 S.W.3d at 590–91.

**5.** Even if we addressed this point, it would be denied because a third party's derivative visitation from a custody award to a parent does

not amount to an award of visitation or third party custody. *See, e.g. KJB,* 779 S.W.2d at 40–41; *In re C.N.H.,* 998 S.W.2d 553, 559 (Mo.App. S.D.1999).

**6.** The judge commented within the findings that Mother was "non-responsive and a fair assessment is that she has an inability to answer a question directly."

## Conclusion

In conclusion, we reverse and remand to the trial court so that it may hear the excluded evidence about Father and the paternal grandparents concerning the history of abuse prior to the 2003 judgment and make the appropriate written findings pursuant to section 452.375 with the opportunity to fashion the visitation plan in light of those findings. We also advise the trial court to clarify the custody arrangement and the best interest findings.[7] We affirm the trial court's decision to award Mother sole legal and physical custody and child support.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J., concur.

---

7. Mother's claims of error on appeal show that there is some confusion with regard to the custody terms of the judgment. The terms within the judgment at issue evidence that sole custody was awarded to Mother with supervised visitation to Father. Mother asserts on appeal, however, that by incorporating the 2003 modification judgment, which awarded Father joint physical custody, the trial court awarded joint physical custody to Father. On remand, the trial court should clarify that it was awarding sole legal and physical custody to mother and supervised visitation to Father.