Mark A. **HEADY**,
Petitioner–Respondent,

v.

Lissa **HEADY**, Respondent–Appellant.

No. 53644.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 21, 1989.

Mary Ann Weems, Clayton, for respondent-appellant.

N. Barrett Braun, Clayton, for petitioner-respondent.

CARL R. GAERTNER, Judge.

This case involves the dissolution of a marriage of ten months duration. The trial court denied appellant's request for $9,600 in lump sum maintenance, found no marital property to be distributed and ordered each party to retain his or her separate property and to pay their respective attorney's fees. We affirm.

Lissa Heady (appellant) had been employed for five years by Mark Heady (respondent) in his cleaning business. When they decided to marry, an Antenuptial Agreement was prepared by Mark's attorney. A copy of this agreement was reviewed by Lissa's personal attorney prior to its execution. The relevant portions of this nine page agreement provided for each party to retain separate ownership of his or her property, whether acquired before or during the marriage, and including future earnings and income. In the event of dissolution of the marriage, each party expressly waived all rights to maintenance or to any interest in the separate property of the other. The assets of each party were disclosed by attachments to the agreement.

During the marriage, Mark and Lissa resided in her home with her two sons from

a previous marriage. Each maintained separate bank accounts. Mark paid Lissa from $300 to $500 per month as his share of their living expenses. These payments ceased when the parties separated ten months after their wedding.

Mark commenced this dissolution proceeding and Lissa concurred in his allegation that the marriage was irretrievably broken. By her pleadings, Lissa sought a declaration that the Antenuptial Agreement was invalid and unenforceable due to lack of consideration and failure to provide full disclosure of assets. Mark and Lissa were the only witnesses at the hearing. The Antenuptial Agreement was received in evidence with the understanding the court would consider a motion to strike the agreement after Lissa's evidence had been adduced. No such motion is disclosed by the record before us.

The evidence regarding lack of disclosure of assets consisted of Mark's admission that he had failed to include within his four page listing of assets, valued in excess of $200,000, sports equipment, tools, cameras and clothing. The evidence regarding the value of these omitted items, although meager and indefinite, indicates their value to be insignificant in comparison to the value of the disclosed assets. The evidence regarding a failure of consideration was that the recited monetary consideration, $10, did not in fact change hands.

In her testimony, Lissa acknowledged she was not seeking any share of the assets Mark owned before the marriage or acquired after the marriage. She expressly relinquished any request for permanent or "periodic" maintenance. She did request the court to order payment of her attorney's fees and to award her "$400 a month for every month that he has been gone—we've been going through this," a total of $9,600.

The trial court ordered the marriage dissolved, denied maintenance, ordered each party to retain his or her separate property and found no marital property to be apportioned. The decree is silent regarding attorney's fees and makes no mention of the Antenuptial Agreement.

Lissa appeals charging trial court error in failing to determine whether the Antenuptial Agreement was valid and enforceable, in failing to set aside separate property and to divide marital property, and in failing to award her maintenance and attorney's fees. Appellate review of this court tried case is circumscribed by the oft-quoted standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and we must affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Since neither party requested specific findings of fact, and none were made by the court, all fact issues shall be considered as having been found in accordance with the result. Rule 73.-01(a)(2).

Under the circumstances of this case, the fact the trial court made no expressed determination regarding the validity of the Antenuptial Agreement does not warrant a remand for that purpose. The burden of proving the invalidity of an Antenuptial Agreement which recites consideration and is admittedly executed is upon the party seeking to avoid its enforcement. *McQuate v. White*, 389 S.W.2d 206, 212 (Mo.1965). The evidence in this case falls far short of showing a submissible issue regarding the validity of the agreement. Lissa's claim of lack of consideration fails despite the non-payment of the $10 in view of "the further consideration of the mutual promises, conditions and other matters stated" in the agreement. *See Roberts v. Estate of Roberts*, 664 S.W.2d 634, 639 (Mo.App.1984). The evidence regarding non-disclosure of personal items of nominal value is unworthy of serious consideration because it is so inconsequential. Although not pleaded, Lissa claimed to lack understanding of the agreement, a claim of little merit in view of her consultation with her personal attorney before signing the document. Although she questioned the accuracy of the values assigned to certain of Mark's assets, she presented no evidence of different values. The mere fact that hind-

sight may indicate the provisions of the agreement were improvident does not render the agreement unconscionable. 3A. Lindey, L. Parley, *Lindey on Separation Agreements and Antenuptial Contracts*, § 90.25, at 90–110 (1988).

The trial court's decree carried into effect the provisions of the Antenuptial Agreement with a single exception; the provision requiring the non-complying party to reimburse the other for expenses, including attorney's fees, incurred in enforcing the agreement. Lissa can hardly contend that she has been aggrieved by reason of the court's denial of Mark's request for an award of attorney's fees.

Moreover, we would affirm the trial court's judgment if the evidence concerning the Antenuptial Agreement is totally disregarded. During the ten months the parties lived together, they continued to maintain complete separation and individuality in their financial affairs. The only exchange between them was a monthly payment Mark made to Lissa and this was calculated on the basis of his share of expenses, in effect, a payment for room and board. Lissa's request for $9,600 in maintenance in gross is not based upon any of the factors set forth in § 452.335, RSMo 1986, as required findings in support of an award of maintenance. Rather, her request for $400 per month for the period between their separation and the hearing sounds more like a prayer for damages than a request for maintenance. The evidence shows Lissa's annual earnings at the time of the marriage to have been $11,000 to $12,000 per year. At the time of the hearing, she was earning $16,500. Lissa testified she was not requesting any share of Mark's business nor of the assets that he had before or that he acquired after the marriage. The only evidence which might be construed as constituting a marital asset was a $5,000 check given to Mark by his parents as a "wedding present." The evidence fails to disclose the disposition of this money other than Lissa's testimony that a portion thereof was used to purchase an IRA for her. Considering the brief duration of the marriage and the financial condition of the parties before, during and after the marriage, the trial court's decree was well within its discretion.

JUDGMENT AFFIRMED.

PUDLOWSKI, C.J., and SATZ, J., concur.