**In re the Marriage of Karen R. KROEGER–EBERHART,**
**Appellant,**

**v.**

**Herbert EBERHART, III, Respondent.**

**No. ED 88716.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 4, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 2008.

Application for Transfer Denied
June 24, 2008.

---

Richard B. Blanke, St. Louis, MO, for appellant.

Lester H. Goldman, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

The mother, Karen Kroeger–Eberhart, appeals the judgment entered by the Circuit Court of the City of St. Louis in her dissolution-of-marriage action against the father, Herbert Eberhart III. The mother appeals the trial court's evidentiary rulings, the award to the father of unsupervised visitation with the parties' minor child, and the award of joint legal custody of the child. We affirm the trial court's judgment with regard to the evidentiary rulings and the visitation award. We reverse and remand the award of joint legal custody because the record contains no evidence that the parties have the ability to function as a parental unit in making decisions for their child's benefit.

### Factual and Procedural Background

The parties married in 2000 and had one child born in 2001.[1] The parties separated in February 2004 when the mother and the children left the marital home amidst allegations that the father had sexually abused the parties' child. The mother immediately thereafter filed a petition for dissolution of marriage, the father filed an answer and counter-petition, and the trial court appointed a guardian ad litem for the child. The trial court entered a consent judgment and order *pendente lite* in June 2004, which granted the mother sole physical and legal custody and awarded the father supervised visitation with the child without prejudice. The court conducted a two-day trial in December 2005, during which it heard testimony from the parties, two expert witnesses, two police officers, and the mother's sister-in-law. The trial court also received into evidence the depositions of nine other witnesses, including depositions of family members and numerous professionals. The court also considered the records of the child's physical exams, expert witnesses' reports, police reports, and Children's Division records, all of which were admitted in evidence. We summarize the evidence in the light most favorable to the judgment.

The mother testified that the child, who had just turned three years old at the time of her first disclosures, told her that the

---

1. The mother had another child who was eleven years old at the time of trial.

father had inserted his finger into the child's vagina and rectum. The mother conceded that she did not believe the child initially, but she became concerned about the allegations' truth after attending a training session at work about child sexual abuse.[2] The mother testified that the child later reported additional acts of sexual abuse to her. The mother contacted the police and had her pediatrician examine the child. The pediatrician's visual exam of the child revealed nothing out of the ordinary. The child repeated the allegations to the pediatrician who telephoned the child-abuse hotline. The mother and the children left the marital home that same day.

A forensic interviewer with Children's Advocacy Services of Greater St. Louis interviewed the child, but could neither rule out nor substantiate the abuse allegations. A physician affiliated with Children's Advocacy Services twice examined the child. This physician found the child's anus to be normal. Because of the child's apprehension, the physician could not perform a full genital exam; in his limited genital exams, he noted physical findings that were inconclusive regarding abuse.

Peg Schwartz, a forensic evaluator with Children's Advocacy Services, met with the child six times for an extended evaluation. Ms. Schwartz testified that she could not reach a conclusion as to whether the child was abused. She testified that she was reasonably sure that the father had touched the child, but she was unable to rule out alternative explanations for any contact, such as application of medication.

Lieutenant Jack Huelsman, deputy commander of the St. Louis Police Depart-ment's Internal Affairs Division, testified that his department investigated the allegations against the father, but that the allegations were not sustained. Lieutenant Huelsman testified this determination meant there was insufficient evidence to either prove or disprove the allegations.

Sergeant Brian Haley, the father's supervisor at the police department, testified that the father approached him several months before the allegations arose and told Sergeant Haley that he feared the mother might seek a restraining order against him. The father also told Sergeant Haley that he and the mother had had difficulties for the past year concerning money, the children's discipline, and his mother-in-law.

The father denied the sexual-abuse allegations, and no criminal charges were filed against him. The father testified that he had touched the outside of the child's vagina when wiping her, but that he never touched the child as an intentional sexual act. The father also testified that the mother encouraged the child to curse him. Several months before their separation, according to the father, the mother told him that all of his money would go to child support and that she would find a way to prevent him from seeing the children.[3]

Dr. Lisa Emmenegger, a psychologist who performs abuse, neglect, and sexual-tendency assessments, interviewed the parties and administered various psychological tests. Dr. Emmenegger testified that she could not reach a conclusion whether the abuse allegations were true. She questioned the parties' behavior and whether it may have influenced the child. For example, when the child made the

---

2. Both parties were St. Louis City police officers at the time the allegations arose. The father remained an officer with the St. Louis Police Department at the time of trial.

3. The father testified that he considered the mother's older child from a previous relationship to be his child too.

initial allegations, the adults laughed, and the mother had the child repeat the allegations to the father and the mother's friend. According to Dr. Emmenegger, such behavior could positively reinforce the child and affect her interest in repeating the statements. Dr. Emmenegger testified that she had gathered no information to suggest the continued separation of the father and the child, and she recommended therapeutic visits to help the father and child readjust to one another. The guardian ad litem recommended that the father's visitation with the child continue to be supervised, based largely on the child's belief that "something" occurred.

The trial court found that the abuse allegations against the father were not credible. In a 61–page amended judgment entered in August 2006, the trial court set forth the evidence and its findings in detail. The trial court, *inter alia*, dissolved the parties' marriage, awarded the parties joint legal custody, awarded the mother sole physical custody, and granted unsupervised visitation to the father following a transitional period for the father and the child, which included counseling for the father. On appeal, the mother makes three claims of error. She challenges the trial court's rulings excluding out-of-court statements alleging that the father abused the mother's nieces; she disputes the award of unsupervised visitation; and she contests the award of joint legal custody.

## Discussion

In her first point on appeal, the mother claims the trial court erred in excluding out-of-court statements made by the mother's nieces, wherein the nieces alleged that the father sexually abused them. The mother claims that the trial court erred in excluding the nieces' statements on the bases of hearsay, relevance, and privilege. The mother contends that the nieces'

statements are relevant to establish the father's intent and the absence of mistake or accident, are admissible as exceptions to the hearsay rule, and are not privileged. The mother repeatedly sought to introduce evidence of the nieces' out-of-court statements, and the father and the guardian ad litem objected. The mother sought to make offers of proof on multiple occasions, and counsel made clear to the trial court the nature of the evidence the mother sought to introduce. The court accepted as an offer of proof a videotaped interview of one of the nieces with a nurse practitioner at Children's Hospital. The trial court excluded all of the nieces' out-of-court statements as irrelevant and, in addition, excluded some of the statements based on hearsay and the nieces' privilege with their counselor.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *KRP ex rel. Brown v. Penyweit*, 219 S.W.3d 829, 834 (Mo.App. W.D.2007). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances, is so arbitrary and unreasonable that it shocks the sense of justice, and shows a lack of careful consideration. *Id.* We give the trial court's ruling on admissibility of evidence substantial deference. *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 22 (Mo.App. E.D.2005). We are not bound by the trial court's reasons and will uphold the decision if any ground exists to support it. *Id.*

The mother first contends that the nieces' statements are relevant to establish the father's intent and the absence of mistake or accident in the father's touching of the parties' child. She cites a number of criminal cases to support her argument. But the cited criminal cases are of limited value because the evidentiary rules and constitutional considerations differ significantly in the civil arena.

██ The mother also contends that the trial court should have admitted the nieces' statements as exceptions to the hearsay rule. Missouri courts recognize a hearsay exception in court-tried cases for the statements of a child who alleges abuse. *In re S.M.*, 750 S.W.2d 650, 654 (Mo.App. E.D.1988) (citing *In re Marriage of P.K.A.*, 725 S.W.2d 78, 81 (Mo.App. S.D.1987)). The exception applies where the best interest of the child is the primary concern, sexual abuse may have occurred or has been threatened, the child might not be competent or reasonably expected to testify to the abuse, and a substantial basis exists that the statements are true. *Id.* In this case, however, the excluded statements did not relate to abuse of the child who was the subject of the proceedings, thus calling into doubt application of this hearsay exception and, more broadly, the statements' relevancy.

██ Relevancy is the key criterion for admission of evidence, and the court must find evidence both logically and legally relevant in order to admit it. *Olinger v. General Heating & Cooling Co.*, 896 S.W.2d 43, 48 (Mo.App. W.D.1994). "Evidence is 'logically relevant' if such evidence tends to make the existence of any material fact more or less probable than it would be without the evidence." *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992) (Thomas, J., concurring). But the inquiry does not end with logical relevance. Evidence must also be legally relevant to be admitted. *Id.* To determine legal relevance, the court must weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of

unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence. *Id.* The trial court must measure the usefulness of the evidence against its cost, and if the cost outweighs the usefulness, then the evidence is not legally relevant, and the court should exclude it. *Id.*

The mother cites *In re A.A.T.N.*, 181 S.W.3d 161 (Mo.App. E.D.2005), for the proposition that hearsay statements of other children who have alleged abuse, but who are not subjects of the instant proceedings, are admissible. *A.A.T.N.*, however, does not support the mother's argument. In *A.A.T.N.*, it appears the other child whose hearsay statements were admitted was also the subject of a termination-of-parental-rights proceeding along with her half-sister, A.A.T.N. *A.A.T.N.*, 181 S.W.3d at 165 ("The Juvenile Officer presented the testimony of [the children's therapist and their caseworker], both of whom testified that termination was in the best interests of the *children*.")(Emphasis added). Thus, the other child's statements that she suffered abuse at the hands of her stepfather, who was A.A.T.N.'s father, were certainly relevant. The mother cites no child-custody case wherein the court admitted statements, whether hearsay or not, alleging abuse of a child who was not the subject of the custody proceeding. Our own research revealed no Missouri case that analyzes the relevancy issue of such evidence in the context of a child-custody determination in a dissolution action.[4]

---

4. We are aware of *Ibrahim v. Ibrahim*, 825 S.W.2d 391 (Mo.App. S.D.1992), wherein the wife's niece testified that the husband in that case sexually abused her. The opinion contains no discussion or analysis of the relevance or admissibility of the niece's testimony. We are also aware of *Lapee v. Snyder*, 198 S.W.3d 172 (Mo.App. W.D.2006). There, the Western District held that the trial court erred in prohibiting the mother from adducing evidence of the father's abuse of the mother's daughter and of other domestic violence against the mother and child. *Id.* at 174–76. The *Lapee* Court held that exclusion

We reiterate that we accord the trial court's ruling on admissibility of evidence substantial deference, and we will not disturb the trial court's ruling absent an abuse of discretion. *Boggs,* 164 S.W.3d at 22. Where reasonable persons can differ about the propriety of the trial court's action, we cannot say that the trial court abused its discretion. *Kehr v. Knapp,* 136 S.W.3d 118, 122–23 (Mo.App. E.D.2004). In a non-jury case, the trial judge serves not only as the gatekeeper, who decides whether to admit or exclude evidence, but also as the fact-finder. Given this important circumstance, the trial court is in the best position to determine whether additional evidence would aid the court in determining an issue of fact. Correspondingly, this Court owes the trial court broad deference in such rulings on relevance.

In this case, the trial court determined that the out-of-court statements of two children who alleged that the father abused them, but who were not the subject of the custody proceedings, were not relevant to its determination of the best interest of the parties' child. The trial court also expressed concerns about injecting unfair prejudice into the trial. The trial court admitted extensive evidence relating to the alleged abuse of the parties' child, who was the subject of these proceedings. Further, the record demonstrates that the court had substantial evidence before it concerning the child's best interest. Finally, the trial court's comprehensive findings set forth in its judgment demonstrate that the court carefully considered all the evidence in reaching its decision, including the evidence concerning the child's abuse allegations. We hold that the trial court did not abuse its broad discretion in ex-

cluding the out-of-court statements alleging abuse of two children who were not the subject of the proceedings as irrelevant. Given this holding, we need not further consider the trial court's exclusions of evidence based on claims of hearsay and privilege. We deny the mother's first point.

■ In her second point, the mother claims the trial court erred in granting the father unsupervised visitation. The court ordered the father's unsupervised, daytime visitation to commence automatically after the father either completed ten sessions with a psychologist or obtained a release from therapy, without further court proceedings to determine the child's best interest at that time. Upon the father's completion of twenty therapy sessions or release from therapy, the court awarded him unsupervised, overnight visits with the child. But the mother argues that if the court does not reevaluate the child's best interest at the therapy's conclusion, no substantial evidence establishes what will be in the child's best interest at that time. She further contends that section 452.400.2(3) RSMo. (Supp.2006) should be applied in initial custody and visitation proceedings, and thus, the father must show the court proof of treatment and rehabilitation before receiving unsupervised visitation. The mother also argues that the court's amended judgment of August 2006 was not its first order of supervised visitation for the father. She cites the trial court's June 2004 consent judgment and order *pendente lite* as the first order for supervised visitation, which, the mother argues, was entered solely because of her allegations of abuse. The mother claims that the court would never have

of evidence of domestic violence was a misapplication of the law in view of the statutorily required findings in this regard in custody determinations, but the Court did not address

the issue of relevance of the evidence concerning abuse of the mother's daughter. *Id.* at 175–76.

ordered supervised visitation but for these allegations.

The standard of review in a dissolution action is the same as for any court-tried case. *Walsh v. Walsh*, 184 S.W.3d 156, 157 (Mo.App. E.D.2006). We will affirm the judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Walsh*, 184 S.W.3d at 157.

As an initial grant of visitation, section 452.400.1 RSMo. (2000) governs this case.[5] *Lipic v. Lipic*, 103 S.W.3d 144, 147 (Mo. App. E.D.2003); *J.L.S. v. D.K.S.*, 943 S.W.2d 766, 772 (Mo.App. E.D.1997) (2–1 decision). The Missouri Supreme Court has made clear that section 452.400.2 is limited to modifications of existing orders and that "[f]or sec. 452.400.2 to apply, the modification must restrict or limit one party's visitation rights compared to their visitation rights under the original agreement." *Turley v. Turley*, 5 S.W.3d 162, 165 (Mo. banc 1999).

Section 452.400.1 RSMo. (2000)[6] provides that a parent not granted custody is entitled to reasonable visitation rights unless the court finds that visitation would endanger the child's physical health or impair the child's emotional development. The court shall consider evidence of domestic violence in making its award, and the court shall not grant visitation to a parent who has been convicted of certain felonies where the child is the victim. Section 452.400.1.

The mother cites *J.L.S.* and *Lipic* for the proposition that the trial court must reevaluate the situation once the father has completed therapy, and before granting the father unsupervised visitation, in order to determine the best interest of the child at that time. In *J.L.S.*, the trial court ordered family counseling and other measures over the course of a year to help the children resume face-to-face visitation with their father, who had undergone sex-reassignment surgery. *J.L.S.*, 943 S.W.2d at 770–72. On appeal, the mother sought to rely on section 452.400.2 RSMo. (1994) for the proposition that because the trial court ordered a restriction on the father's visitation, the father must show treatment and rehabilitation before receiving unrestricted visitation. *Id.* at 772. The Court

---

**5.** The mother argues that section 452.400.2(3) should apply to this case, and she includes the current version of the statute in her brief's appendix. The legislature amended sections 452.400.1 and 452.400.2 in 2004, after the mother filed her petition for dissolution. H.B. 1453, 92nd Gen. Assem., 2d Reg. Sess. (Mo.2004). The legislature then rewrote section 452.400.2 and divided it into its current three subparagraphs, effective August 28, 2005. H.B. 568, 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005); *see* Mo. Const. art. III, sections 20(a) and 29 (providing that the legislative session ends on May 30 and that laws become effective 90 days after adjournment of the legislative session in which they are enacted). Prior to its 2005 rewriting, 452.400.2 consisted of a single paragraph, which began with the following sentence.

The court may modify an order granting or denying visitation rights whenever modifi-

cation would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.

Courts should apply the statutes in effect when a dissolution petition is filed rather than amended versions of the statutes that become effective after the petition's filing. *Walsh*, 184 S.W.3d at 157. This remains true even where the case is tried after the amended statute's effective date. *Id.* Thus, we apply section 452.400 RSMo. (2000), the version of the statute in effect when the mother filed her petition for dissolution in February 2004.

**6.** All statutory references are to RSMo. (2000) except as otherwise noted.

stated that because this case involved an original grant of visitation rights, rather than a modification, section 452.400.1 was the applicable statutory provision. *Id.* The Court, nonetheless, chose to address the mother's contention that the trial court must conduct a hearing and reevaluate the parties before removing the restriction on visitation. *Id.*

The Court noted the "unique situation" and held that, at the time of the decree's entry, the evidence did not support removal of the restrictions on the father's visitation. *Id.* at 773. The Court remanded the case and instructed the trial court not to order visitation until such time as the parties demonstrated that visitation was in the children's best interest. *Id.* at 773–74. *Lipic*, which the mother in the instant case also cites, relied on *J.L.S.* when it stated:

> [T]o insure protection of the children's best interest under section 452.400.1 [regarding initial visitation awards], a trial court is required to reevaluate the parties' situation before lifting a restriction placed on visitation when, at the time the restriction is imposed, the court cannot determine what will be in the children's best interest.

*Lipic*, 103 S.W.3d at 148.[7]

In *Lipic*, the trial court ordered monitored visitation with the father for three months based on the children's emotional needs, the lack of significant contact between the father and children, and the father's lack of understanding of the children's emotional and developmental needs. *Id.* On appeal, the Court held that the trial court must reevaluate the children's best interest before granting the father unsupervised visitation because there was no evidence from which the trial court could have determined, at the time of judgment, the type of parent the father would be when supervised visitation ended. *Id.* Nonetheless, the Court stated:

> There may be cases in which, at the time of the original order granting visitation, the court *can* determine what will be in the best interest of the children after a given period of restricted visitation. For example, a trial court could determine that given a parent's long absence from the children, it would be best that the first few visits with that parent take place at the home of a grandparent or other relative, but that thereafter unrestricted visitation would be appropriate.

*Id.* (emphasis in original). In such a case, the trial court may be in a position to know what is in the children's best interest at the end of the initial visits without undertaking a reevaluation. *Id.*

---

7. We note a number of anomalies in *J.L.S.*'s reasoning and thus with that opinion as the basis for the *Lipic* decision. First, it is unclear why the *J.L.S.* Court proceeded with a section 452.400.2 analysis after finding that section 452.400.2 did not apply. We also question whether *J.L.S.* fully adheres to our standard of review, which requires us to defer to the trial court's ability to judge witness credibility and other intangibles and to accept as true the evidence and reasonable inferences in the light most favorable to the judgment. *Malawey v. Malawey*, 137 S.W.3d 518, 522 (Mo.App. E.D.2004). In *J.L.S.*, the trial court found that the father was a caring and loving parent and that the mother had interfered in the relationship between the father and the children. *J.L.S.*, 943 S.W.2d at 771. The court determined that one of the father's experts was an "expert's expert" in the area of gender-identity issues and the relationship of transsexuals with their children while it found that the mother's experts lacked experience in these areas and thus lacked credibility. *Id.* at 770. This Court also did not draw inferences favorable to the judgment when it determined that the trial court must have made an implied finding of impairment to the children's emotional development and then used this implied finding to require a reevaluation of the parents and children before allowing visitation.

In any event, *J.L.S.* and *Lipic* are clearly distinguishable from the case at bar. In *J.L.S.* the father had undergone sex-reassignment surgery, and the children did not know of it. *J.L.S.*, 943 S.W.2d at 770, 773. In *Lipic*, the trial court ordered supervised visits, in part because the father lacked understanding of his children's needs. *Lipic*, 103 S.W.3d at 148. Here, the trial court found that the allegations of sexual abuse were not credible, and there existed no other basis for the court to require the visitation be supervised. The court made no findings that visitation would endanger the child's physical health or impair her emotional development. Rather, it found that the father's conduct was appropriate during the supervised visits with the child and that he had completed all visits. The court also found that the father had had no unsupervised contact with the child for 2½ years at the time of judgment, and therefore, it was in the child's best interest to continue supervised visits for a limited period, notwithstanding the court's determination that no abuse had occurred. It is apparent that the trial court ordered a transitional period for the father and the child to adjust from supervised to unsupervised visits because the 5½-year-old child had not seen her father in an unsupervised setting in 2½ years. The trial court found no reason for continued supervised visitation, other than the child's long-time lack of contact with the father outside of a supervised setting.

As suggested in *Lipic*, given such findings, the trial court in this case could have reasonably determined, based on substantial evidence at the time of judgment, what would be in the child's best interest after the transitional period the court ordered. Because the June 2004 *pendente lite* order was entered by consent and without prejudice and without a full evidentiary hearing on its merits, we also reject the mother's argument that the *pendente lite* order for supervised visitation necessitates that the father show proof of treatment and rehabilitation before receiving unsupervised visitation. We hold that the trial court correctly applied section 452.400.1 and that the grant of unsupervised visitation to the father rests on substantial evidence of the child's best interest. We deny the mother's second point.

■ In her third point, the mother claims the trial court erred in awarding the parties joint legal custody of the child. She contends the award is not supported by substantial evidence showing the parties share a commonality of beliefs and a willingness and ability to function as a parental unit. She maintains that the trial court awarded joint legal custody because of her perceived unwillingness to acknowledge that the father may not have abused the child.

■ There must be substantial evidence to support a joint custody award. *In re Marriage of Johnson*, 865 S.W.2d 412, 417 (Mo.App. S.D.1993). Section 452.375.1(2) provides that:

> "Joint legal custody" means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority[.]

Section 452.375.4 states that Missouri public policy encourages parents to participate in decisions affecting the health, education, and welfare of their children and that "the court shall determine the custody arrangement which will best assure both parents participate in such decisions . . . so long as it is in the best interests of the child." This statute, however, does not create a presumption in favor of joint custody.

*Malawey v. Malawey,* 137 S.W.3d 518, 525 (Mo.App. E.D.2004).

Where child custody is at issue, the child's welfare is the primary consideration. *McCauley v. Schenkel,* 977 S.W.2d 45, 50 (Mo.App. E.D.1998). It is well-established that a commonality of beliefs and an ability to function as a parental unit in making decisions are critical considerations in determining whether joint legal custody is in the child's best interest. *Id.; Lipe v. Lipe,* 743 S.W.2d 601, 602 (Mo.App. E.D.1988). Where parents cannot communicate or cooperate and where they cannot share decision-making regarding the welfare of their children, joint custody is improper. *McCauley,* 977 S.W.2d at 50. The preference for joint custody stated in section 452.375 does not mandate a joint custody award designed to induce parents to find common ground; rather it expresses a preference in favor of parents who show the willingness and ability to share child-rearing rights and responsibilities. *Burkhart v. Burkhart,* 876 S.W.2d 675, 680 (Mo.App. W.D.1994); *Johnson,* 865 S.W.2d at 417; *Margolin v. Margolin,* 796 S.W.2d 38, 49 (Mo.App. W.D.1990). "[T]he preference for joint custody is one grounded in and validated by the more abiding public policy that in the given circumstances only that custody arrangement is appropriate that best serves the interests of the child." *Id.* The custody determination "begins and ends with that dominant consideration." *Id.* Consequently, custody should not be used to reward or punish either party. *McCubbin v. Taylor,* 5 S.W.3d 202, 209 (Mo.App. W.D.1999).

In this case, the record contains no evidence that the parties had any demonstrated capacity to co-parent. The court stated near the end of the trial:

> I've got that [the co-parenting question] solved. They can't. You don't need to show me that, if that's what you are trying to get into. You know, I'm not going to award joint custody, I'll tell you right now, legal or physical.

> \*   \*   \*

> [N]obody's asking for joint legal, that's number one. Number two, I am satisfied that these two people cannot co-parent. Perhaps for reasons different than you two think, but I'm satisfied they can't.

While no evidence showed the parties had the ability to work together, ample evidence demonstrated the contrary. The mother admitted that since the separation, she had not kept the father apprised of anything concerning the child and that the parties had had no meaningful discussions. She did not tell the father that she moved the child from St. Louis City to Lincoln County, did not provide the father with the child's address, and did not inform the father that she enrolled the child in daycare. The mother refused the father's requests to change the child's babysitter and pediatrician. The parties admitted that prior to separation they cursed and exchanged racial and sexual slurs in the children's presence. The father testified that, prior to their separation, the parties were in constant turmoil over numerous issues, including childcare and discipline. He testified that it seemed the only time the parties had peace in their home was when a child was ill. The mother testified that she thought she and the father could talk in the future. The father testified that he could try to co-parent, but that the mother was unwilling. He hoped that with a court order the parties could make decisions together.

In its judgment, the trial court found that the mother and father were unable to communicate to the degree necessary to ensure that the child would not suffer from a stalemate between the parents, a finding

that is not challenged on appeal. The trial court blamed the parties' inability to communicate on the mother's unwillingness to acknowledge the possibility that the father did not abuse the child and noted that the mother's attitude was not a legitimate reason to deny joint legal custody. The court also found that the mother placed her own selfish interests ahead of the child's best interest. For this reason, and because the mother intentionally sought to exclude the father from decisions concerning the child, the trial court found that there was "no attractive alternative" to joint legal custody.

The trial court had the unenviable task of crafting a legal custody award when the child would spend the majority of her time in Lincoln County with the mother, who received sole physical custody. Yet at the same time the court believed that the mother was the main source of the parties' inability to work together. But the court's focus must remain on the best interest of the child and the effective ability of the parties to co-parent to advance the child's best interest. Here, the record contains no evidence that the parties actually can work together. Before judgment, the trial court made clear that it believed joint legal custody was impossible. The parties' assertions that they think they can talk, or that they hope to work together once they have a court order to do so, does not overcome the evidence of their prolonged, demonstrated inability to the contrary. *See Hankins v. Hankins,* 920 S.W.2d 182, 186–87 (Mo.App. W.D.1996) (father's claim that he thought parties could solve their communication and decision-making problems in the future held insufficient to overcome evidence supporting sole legal custody award).

The trial court's award of joint legal custody is not supported by substantial evidence. The parties have failed to show that they share a commonality of beliefs and an ability to function as a parental unit in making decisions for the benefit of their child. Given this failure, which the trial court recognized prior to judgment, the joint legal custody award is improper. We grant the mother's third point and reverse and remand the award of joint legal custody.

In conclusion, we find no abuse of discretion in the trial court's exclusion of the out-of-court statements of the mother's nieces. We also hold that the trial court's judgment granting the father unsupervised visitation following a transitional period for the father and child is supported by substantial evidence and does not erroneously apply the law. However, we conclude that the joint legal custody award is not supported by substantial evidence. Therefore, we reverse the portion of the trial court's judgment awarding the parties joint legal custody and remand the cause to the trial court for proceedings consistent with this opinion. It is within the trial court's discretion to reopen the record and receive additional evidence concerning legal custody, given the passage of time since trial and judgment. *Granger v. Granger,* 217 S.W.3d 927, 932 n. 10 (Mo. App. S.D.2007). We affirm the trial court's judgment in all other respects.[8]

ROBERT G. DOWD, JR., J., and NANNETTE A. BAKER, J., concur.

---

**8.** The parties agree that the record of the March 2007 hearing to determine whether the

father had completed the ordered number of counseling sessions should constitute part of

the record on appeal. Therefore, we grant
the father's motion to file a supplemental le-